UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY G.,<br><br>   Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>   Defendant. | Civil Action No. 1:23-cv-01026<br><br>**OPINION** |

**APPEARANCES**:

Samuel Fishman
CHERMOL & FISHMAN, LLC
11450 Bustleton Avenue
Philadelphia, PA 19116

 *On behalf of Plaintiff*.

Evelyn Rose Marie Protano
Special Assistant United States Attorney
C/O SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION,
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

 *On behalf of Defendant*.

**O'HEARN, District Judge.**

 This matter comes before the Court on Plaintiff Kimberly G.'s[1] appeal from a denial of Social Security disability benefits by the Commissioner of Social Security. The Court did not hear

---

 [1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Administrative Law Judge's ("ALJ") decision.

I. **BACKGROUND**

The Court recites herein only those facts necessary for its determination on this Appeal.

A. **Administrative History**

On April 11, 2017, Plaintiff filed an application for disability insurance benefits alleging that she had been disabled since January 1, 2012. (AR 268). Plaintiff later amended this date to June 18, 2017. (AR 51). The application was denied initially on August 15, 2017, and upon reconsideration on January 5, 2018. (AR 159, 169). Plaintiff filed a request for a hearing before an ALJ, which was held on June 13, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). (AR 62–96). In a decision dated August 8, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 132–53).

The Appeals Council remanded the case back to an ALJ on June 12, 2020, ordering "further consideration . . . [be] given to whether there are a significant number of jobs in the national economy that [Plaintiff] is capable of performing, based upon her age, education, work experience and residual functional capacity." (AR 154–58). A second hearing before an ALJ was held on October 13, 2020, at which Plaintiff and a VE testified. (AR 46–60). On February 25, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 14–38). The Appeals Council denied Plaintiff's request for review. (AR 1–7). Plaintiff appealed to this Court, which remanded the case on March 22, 2022 by consent of the parties. (AR 1085–87). A third hearing was held before an ALJ on October 12, 2022, at which Plaintiff and a VE testified. (AR 1057–84). The ALJ rendered a partially favorable decision

on November 10, 2022, finding that Plaintiff was disabled as of June 17, 2022, but not prior to that date. (AR 944–86). Plaintiff timely filed this appeal on February 21, 2022, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), challenging the decision as to the date of disability. (ECF No. 1).

### B. Plaintiff's Background and Testimony

At the alleged onset of disability, Plaintiff was fifty years old and living with her two children and ex-husband. (AR 51, 1070). Plaintiff finished high school and worked as a floral designer from 1997 until 2008. (AR 69, 313). Plaintiff had not performed work since February 28, 2016. (AR 312).

Plaintiff's claim cited the following illnesses, injuries, or conditions: fibromyalgia, depression, asthma, high blood pressure, chronic back pain, and hypothyroid. (AR 312). At the administrative hearing, Plaintiff alleged that she was in constant pain and experiences brain fog and panic attacks. (AR 1067). She testified that she must keep her feet elevated due to swelling and experiences cramping in her arms and fingers. (AR 1067, 1069). Plaintiff spends most of her day in bed using her iPad and watching television. (AR 1072). She alleged that she could stand for no more than five minutes or walk twenty-five steps before she is uncomfortable. (AR 1073).

Plaintiff administers an injection to herself every two weeks and takes Tramadol for pain, which makes her tired. (AR 1069). Plaintiff alleged that she cannot perform most household tasks and relies on her daughter to do so. (AR 1072).

### C. Testimony of Vocational Expert

The ALJ instructed the VE to begin his analysis at Step Five and posed to the VE several hypothetical claimants with various degrees of ability. (AR 1074–81). Specifically, the ALJ asked the VE whether light exertional level jobs existed for a worker who can follow simple instructions and carry out simple tasks with occasional interaction with others. (AR 1074–75). The VE testified

in response that such an individual could perform unskilled work as a mail sorter, office helper, or retail marker. (AR 1075–76). When asked if jobs existed in the national economy for the same worker who could only perform sedentary work, the VE testified that jobs as a document preparer, addresser, monitor, or assembly line worker could be performed. (AR 1076–77).

### D. Medical History

Plaintiff has been examined by several physicians during the relevant period. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

1. <u>Inspira Complete Care ("ICC")</u>

Plaintiff was treated at ICC between October 2011 and January 2022 for many conditions including fibromyalgia, pain, obesity, and asthma. *See generally* (AR 438–552, 856–918, 1165–76). A March 2017 visit documented Plaintiff's pain, depression, and issues with asthma. (AR 438). Plaintiff was exercising and felt that her hypothyroid medication was helping. (AR 438). By November 2017, Plaintiff was riding a bicycle for exercise and was experiencing intermittent fibromyalgia symptoms. (AR 587). In February 2018, Plaintiff reported her pain as an eight out of ten. (AR 907, 910). She had ceased exercising and reported having occasional panic attacks, often at night when relaxing. (AR 907). Arm and shoulder tenderness was observed. (AR 910). Plaintiff continued to experience depression, but her hypothyroidism was asymptomatic. (AR 907). She continued to treat her fibromyalgia pain with Tramadol, an opioid, and was advised in August 2018 that opioids are not indicated for fibromyalgia, can cause hypersensitivity to pain, and can make fibromyalgia symptoms worse. (AR 892, 895).

Plaintiff had stopped dieting by January 2019 and reported neck pain and depression. (AR 885). She continued to take Tramadol for fibromyalgia pain. (AR 886). By October 2019, Plaintiff

4

had lost weight, was exercising, and improved her diet. (AR 869). Plaintiff stated that she "fe[lt] good" and that her mood was improved. (AR 869). She also reported that a new fibromyalgia drug, Cimzia, was helping with her symptoms, particularly pain in her knees. (AR 869). Plaintiff's provider noted that Plaintiff "seem[ed] to be doing better." (AR 873). The provider reported no abnormal findings in the physical examination of Plaintiff. (AR 880–81).

In June 2020, Plaintiff reported that she was "starting to feel happy again," had "completely changed [her] diet," and was "trying to work out more." (AR 861). Plaintiff reported no symptoms when she presented for follow-up for medication refills in January 2022. (AR 1165–67).

2. Cooper Bone and Joint Institute ("Cooper")

Plaintiff was regularly treated at Cooper between February 2018 and October 2022 for fibromyalgia, rheumatoid arthritis, and osteoarthritis. *See generally* (AR 632–57, 715–803, 987–1056, 1181–88). An X-ray of Plaintiff's spine in February 2018 showed minimal spurring and mild disc space narrowing. (AR 644). Plaintiff was told in February 2019 to alternate between rest and exercise to alleviate rheumatoid arthritis symptoms and was recommended to begin aquatic therapy to treat fibromyalgia. (AR 632–33). Plaintiff reported her pain as a six out of ten and stated that Tramadol and Naproxen helped relieve her pain. (AR 637). She was observed to have limited cervical spine range of motion and muscle spasms. (AR 639). During a visit in October 2021, Plaintiff was diagnosed with arthritis. (AR 999). A normal range of motion in her back was observed, as was almost full flexion in a stiff finger. (AR 998).

3. Dr. Hala Eid

In a medical source statement from 2018, Dr. Eid, Plaintiff's rheumatologist, opined that Plaintiff can sit, stand, and walk for no more than three hours total in a typical workday, is rarely able to lift ten pounds, requires alternating between sitting and standing every thirty minutes, and

5

would be absent from work more than three days per month. (AR 597–98). In a letter dated March 2019, Dr. Eid subsequently opined that Plaintiff's rheumatoid arthritis, fibromyalgia, and osteoarthritis render her "unable to work or engage in any meaningful job." (AR 664). By October 2022, Dr. Eid opined that Plaintiff could sit, stand, and walk for less than two hours, was "unable to work," could occasionally lift less than ten pounds, and would be off task more than twenty-five percent of the time at work. (AR 1177–80).

4. Dr. Kara Telesmanick

In a September 2017 letter to New Jersey's Division of Disability Services ("DDS"), Plaintiff's primary care physician, Dr. Telesmanick, discussed Plaintiff's fibromyalgia diagnosis and its associated pain and fatigue. (AR 569). She opined that Plaintiff "is no longer able to work or participate in the activities she enjoys or work." (AR 569).

5. Dr. Juan Carols Cornejo

At the request of DDS, Dr. Cornejo completed orthopedic consultative examinations of Plaintiff in September 2016 and July 2017, chiefly to examine her due to her fibromyalgia diagnosis. (AR 423–27, 558–63). Dr. Cornejo noted that Plaintiff was able to independently get on and off the examining table, as well as move from a lying to sitting up position. (AR 424, 560). Plaintiff appeared comfortable in a seated position throughout. (AR 424). Plaintiff's upper and lower extremities did not appear deformed, instable, swollen, or tender, and exhibited a normal range of motion. (AR 425, 561). In 2016, Plaintiff had a normal range of motion in her spine but had some tenderness at certain areas. (AR 425). By 2017, Plaintiff had decreased range of motion in her cervical spine, but no longer exhibited tenderness along the spine. (AR 561). She had no lower back pain and her gait was normal during both examinations. (AR 425).

Dr. Cornejo noted that Plaintiff had "good mobility of the cervical and mildly decreased mobility of the lumbar spine," as well as "less than 11 tender trigger points associated with fibromyalgia." (AR 426, 562). In 2017, decreased strength in the lower extremities was observed, "but full effort was not appreciated." (AR 562). Plaintiff's decreased spine mobility in 2017 showed "inconsistences in range of motion . . . when evaluated versus when distracted." (AR 562).

Though Dr. Cornejo opined in 2016 that Plaintiff would have difficulty bending her back and experiences constant pain from fibromyalgia, he also opined that Plaintiff could walk, sit, and stand "for a reasonable amount of time with needed breaks." (AR 426). He further opined that Plaintiff would be able to reach and handle fine and small sized objects. (AR 426). In 2017, Dr. Cornejo opined that Plaintiff could walk and stand with reasonable breaks, as well as sit for a reasonable amount of time. (AR 562). In Dr. Cornejo's opined that Plaintiff may have difficulty frequently bending and turning her neck and back, as well as with "physically exerting activity" and heavy lifting. (AR 562). However, in Dr. Cornejo's opinion, Plaintiff "would be able to do light and sedentary activities." (AR 562).

6. <u>Dr. Samuel Sarmiento</u>

At the request of DDS, Dr. Sarmiento completed an orthopedic consultative examination of Plaintiff in March 2019, chiefly to examine her due to her fibromyalgia, asthma, and rheumatoid arthritis. (AR 617–21). Plaintiff was able to independently get on and off the examining table, as well as to go from lying down to sitting up, and appeared comfortable in a seated position. (AR 619). Plaintiff was observed to have arthritic changes in her hands, but had normal range of motion in her upper and lower extremities. (AR 619). Plaintiff had a decreased range of motion and tenderness in certain areas of the spine. (AR 619–20). Other areas of the spine showed a normal range of motion and no tenderness. (AR 619). Plaintiff had no lower back pain. (AR 620).

7

Dr. Sarmiento opined that Plaintiff would be able to handle fine and gross manipulation, including of fine and small objects. (AR 620). She was observed to ambulate well without the use of assistive devices. (AR 620). While Dr. Sarmiento observed decreased mobility in Plaintiff's neck and low back, he opined that she could walk, stand, and sit for a reasonable amount of time with needed breaks. (AR 620). He further opined that Plaintiff had "good functionality" of her hands. (AR 620).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). By contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential one, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247

8

F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.*; *see also Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent*, 710 F.2d at 114). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).

### B. Sequential Evaluation Process

The Commissioner of the Social Security Administration ("SSA") has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III. ALJ DECISION

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application. (AR 953).

At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, asthma, hypertension, diabetes mellitus, rheumatoid arthritis, fibromyalgia, obesity, depressive/bipolar disorders, and anxiety/obsessive-compulsive disorders. (AR 953). The ALJ found Plaintiff's hand-burns, hypothyroidism, reduced visual acuity, and conjunctivitis, considered singly or together, cause only transient and/or mild

10

symptoms and limitations, are well controlled, have not lasted or are not expected to last for twelve months, have since been resolved, or are not adequately supported by medical evidence in the record. (AR 954–55). These conditions were found to no more than minimally limit Plaintiff's ability to engage in work-related activities. (AR 955).

At Step Three, the ALJ found that, since March 16, 2017, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, 20 CFR §§ 416.920(d), 416.925, and 416.926. (AR 955).

At Step Four, the ALJ found that, since January 1, 2012, Plaintiff had the RFC to perform light work where Plaintiff can: occasionally climb ramps and stairs; never climb ropes, ladders, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never work at unprotected heights, around exposed moving mechanical parts or with dangerous heavy machinery or equipment such as that which cuts, tears, crushes, shears or punctures in its operations; frequently finger, handle, and reach with the bilateral upper extremities; occasionally be exposed to atmospheric conditions such as dusts, gases, odors, fumes, pulmonary irritants or poor ventilation; occasionally be exposed to humidity, extreme heat/cold; understand, remember, and apply simple instructions; make simple workplace decisions; perform simple routine tasks; occasionally adjust to changes in workplace routines; and occasionally have contact with supervision, coworkers, and the public. (AR 963).

At Step Five, the ALJ found that Plaintiff had no past relevant work and was considered an individual of advanced age as of June 17, 2022. (AR 976). Prior to this date, and in consideration of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (AR 976). Relying on the VE's testimony, the ALJ

found that approximately 110,000 jobs as a mail sorter, 115,000 jobs as an office helper, and 120,000 jobs as a retail marker existed in the national economy and could be performed by an individual with Plaintiff's vocational profile, which the ALJ determined to be consistent with the information contained in the DOT. (AR 976–77). The ALJ therefore concluded that, prior to June 17, 2022, Plaintiff was not disabled under the framework of the Medical-Vocational Rules but was considered disabled from that date forward due to the change in Plaintiff's age category. (AR 977).

## IV. DISCUSSION

In her appeal, Plaintiff alleges two errors within the ALJ's decision: that the ALJ (1) erred in evaluating the medical opinion evidence of record; and (2) failed to discuss Plaintiff's credible limitations or why they were omitted from the RFC. (ECF No. 6 at 3, 10). Plaintiff seeks to have this Court to directly award her benefits. (ECF No. 6 at 13). For the reasons that follow, the Court affirms the ALJ's decision.

### A. The ALJ Properly Evaluated the Medical Opinions of Record.

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Drs. Eid, Telesmanick, Cornejo, and Sarmiento. (ECF No. 6 at 3–10). Specifically, Plaintiff argues that the ALJ "failed to give deference to the opinions of the treating medical sources of record, relied solely upon [his] own lay judgment at the expense of the medical opinions of record, and ignored evidence supportive of the medical opinions of record." (ECF No. 6 at 5). Upon review of the ALJ's decision, the Court discerns no error in the ALJ's evaluation of these medical opinions.

The RFC is crafted at step four and Plaintiff bears the burden at this step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). An ALJ "is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." *Brown v. Astrue*, 649 F.3d 193, 196 (3d

12

Cir. 2011) (internal citation and quotation marks omitted). An ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). An ALJ's factual findings, including the RFC, do not need to follow a particular format "so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones*, 364 F.3d at 505).

When evaluating medical evidence, an ALJ must give controlling weight to and adopt the medical opinion of a treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[2] If the treating physician's medical opinion is not required to be given controlling weight under the regulations, 20 C.F.R. §§ 404.1527(c)(1)–(6) provide factors to consider in determining the weight afforded to opinions, including the nature and extent of the treatment relationship, length of relationship, frequency of examination, supportability of the opinion afforded by the medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician. *See Russo v. Astrue*, 421 F. App'x. 184, 190 (3d Cir. 2011); *see also Plummer*, 186 F.3d at 429 (explaining that an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided"). The ALJ is not required to adopt all limitations assigned by a medical opinion, even if the medical opinion is given significant weight. *See, e.g., Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014). When faced with

---

[2] This case arises from a claim filed before March 27, 2017, and is therefore analyzed by this Court—as it was by the ALJ—under 20 C.F.R. §§ 404.1527 and 416.927.

13

conflicting evidence, an ALJ has discretion in choosing whom to credit. *See Brown*, 649 F.3d at 196–97.

In crafting an RFC, an ALJ need only include limitations that are credibly supported by the evidence in the record. *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). "Where . . . a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." *Id.* When an RFC "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *7 (July 2, 1996). However, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown*, 649 F.3d at 196 n.2.

Here, Drs. Eid and Telesmanick opined that Plaintiff was unable to work. (AR 569, 664). However, Drs. Cornejo and Sarmiento came to the opposite conclusion, with Dr. Cornejo opining that Plaintiff was capable of light and sedentary work, and Dr. Sarmiento opining that Plaintiff could walk, stand, and sit for a reasonable amount of time. (AR 562, 620). Plaintiff submits that the ALJ failed to give proper weight to any of these opinions. (ECF No. 6 at 3–10). Plaintiff does not allege that the ALJ wholly failed to consider these opinions, *see, e.g.*, *Piper v. Saul*, No. 18-1450, 2020 WL 709517, at *3-4 (W.D. Pa. Feb. 12, 2020), but rather asks this Court to re-evaluate the weight assigned to this evidence which was considered by the ALJ. The Court declines to do so.

Here, the ALJ provided sufficient "reason[s] for discounting the evidence" that Plaintiff alleges was improperly considered. *Plummer*, 186 F.3d at 429. In weighing Dr. Cornejo's opinion, the ALJ noted that Dr. Cornejo "conducted thorough exams of [Plaintiff] and set forth the objective exam findings specifically and in detail in his reports." (AR 972). However, the ALJ found that

14

Dr. Cornejo used vague and inconsistent phrases in his examination reports, including failing to specify how many breaks Plaintiff would need, what a "reasonable amount" of time is in a workday to do various activities, and failing to define what "physically exerting," "light," or "sedentary" activity meant. (AR 971); *see also* 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Nevertheless, the ALJ found Dr. Cornejo's opinion to be "generally consistent with the record," namely that Plaintiff does not use an assistive device to ambulate, lacks various physical manifestations of disease, and has no alertness or motor function deficits. (AR 971–72). The ALJ concluded that Dr. Cornejo's opinion on Plaintiff's ability to walk, stand, and sit supported a finding that Plaintiff is not disabled, and assigned "greater/moderate weight" to his opinions. (AR 971–72).

The ALJ also assigned "greater/moderate weight" to Dr. Sarmiento's opinions despite a similar use of vague terms. (AR 972–73). Like the opinion of Dr. Cornejo, the ALJ found Dr. Sarmiento's opinion to be consistent with the record, specifically Dr. Sarmiento's findings related to Plaintiff's ability to sit, stand, and walk. (AR 972). However, the ALJ found that other portions of the record failed to show that Plaintiff is as limited as Dr. Sarmiento opined. (AR 973). The ALJ pointed to the "broad range of normal findings" in Dr. Sarmiento's exam of Plaintiff, as well as the only one-time occurrence in the record of wheezing, as well as inconsistent swelling and edema. (AR 973).

As to Plaintiff's treating physicians, after careful consideration and several paragraphs of explanation, the ALJ assigned little weight to the opinions of Drs. Eid and Telesmanick, finding them to be "inconsistent with the objective findings in the record and prescribed treatment in these providers' own records." (AR 973–75). The ALJ chronicled the ways in which these opinions were

15

unsupported by the record. First, the ALJ noted that "neither provider set forth in their opinions an adequate written explanation with citation to objective evidence" and found the opinions to be "largely conclusory and lacking in exposition." (AR 974); *see also* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Further, neither opinion "specifically commit[ted] to opining [Plaintiff's] disability before the dates on which they were written." (AR 974). Despite the opinion of Drs. Eid and Telesmanick that Plaintiff is unable to work,[3] the ALJ noted that Plaintiff does not require the use of an assistive device, lacks many physical manifestations of her subjective complaints, and lacks cognitive or motor function deficits. (AR 974); *see also* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Moreover, the ALJ found that evidence in the record of Plaintiff's infrequent swelling, edema, wheezing, decreased strength, and decreased sensation contradict the opinions of Drs. Eid and Telesmanick. (AR 974).

In short, the ALJ found the opinions of Drs. Eid and Telesmanick to be unpersuasive and found the opinions of the State agency medical consultants more persuasive—but not completely—as is within his discretion, and the reasons for which were sufficiently stated in the decision. Therefore, the Court discerns no error in the ALJ's determination.

### B.  The ALJ properly considered Plaintiff's limitations in the RFC.

Plaintiff argues that the ALJ "failed to include limitations he found credible in his RFC or to explain why he was omitting these credible limitations." (ECF No. 6 at 10). Specifically,

---

[3] "A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [an ALJ] will determine that [a claimant] is disabled." 20 C.F.R. § 416.927(d)(1).

16

Plaintiff alleges that the ALJ failed to include in the RFC the moderate limitation she has in concentrating, persisting, or maintaining pace. (ECF No. 6 at 11–12). The Court disagrees.

"While obviously related to the limitation findings, the RFC is a determination of the most a claimant can still do despite his limitations based on all the relevant evidence in the case record." *Hess*, 931 F.3d at 209 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8P, at *2) (internal quotations and alterations omitted). "[T]he findings at steps two and three will not necessarily translate to the language used [in the RFC.]" *Id.* Instead, the RFC "must be expressed in terms of work-related functions, such as describing the claimant's abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* (quoting SSR 96-8P at *6) (internal quotations and alteration omitted). "When mental health is at issue, the functional limitation categories are 'used to rate the severity of mental impairment(s).'" *Id.* (quoting SSR 96-8P, 1996 WL 374184, at *4). "[A] wide range of limitation language is permissible" in crafting the RFC, "regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained." *Id.* "[N]o incantations are required [in the RFC] simply because a particular finding has been made at steps two and three." *Id.*

At Step Three, the ALJ found that Plaintiff "has a moderate limitation in the area of concentrating, persisting, or maintaining pace." (AR 962). The ALJ based this determination on Plaintiff's ability "to focus attention on work activities and stay on task at a sustained rate." (AR 961). Though Plaintiff reported being unable to complete tasks, experiencing brain fog, and having panic attacks, the ALJ noted that Plaintiff manages her finances, follows spoken instructions, cares for herself, prepares meals, drives, shops, and attends doctor's appointments. (AR 961). The ALJ

17

pointed to these activities as evidence of Plaintiff's "ability to focus, pay attention, or complete tasks." (AR 961). He also noted that Plaintiff was able to "participate at the hearing without any noted difficulty," including answering questions "in a clear and coherent manner, with no noted difficulties with maintaining her attention." (AR 961–62). The ALJ also listed medical evidence in the record that supported Plaintiff's moderate limitation. (AR 962).

Plaintiff does not dispute the accuracy of the moderate limitation found by the ALJ. She only argues that it was not properly considered in crafting her RFC, (ECF No. 6 at 12), the relevant portion of which states that Plaintiff: "Understands, remembers, and applies simple instructions, makes simple workplace decisions, performs simple routine tasks, occasionally adjusts to changes in workplace routines. Occasional contact with supervision, coworkers and the public." (AR 963). At Step Four, the ALJ explained in detail what evidence of record supported this portion of the RFC, including the fact that Plaintiff has no ongoing mental health treatment, generally performed well in psychological examinations, was able to recall and remember items, and exhibited appropriate social skills and fair judgment. *See* (AR 967–70). He also explained that the RFC accounted for Plaintiff's "mental limitations as to instructions and social contact" and "account[ed] for the potential effects of stress and reduced concentration, persistence and pace on the ability to handle complex instructions and excessive social contact creating stressors." (AR 969).

An ALJ need only provide a "valid explanation" for how a claimant's limitations informed the RFC. *Hess*, 931 F.3d at 211. The ALJ did so here. He "explained at length and with sound reasoning why [Plaintiff's] 'moderate' difficulties in 'concentration, persistence, or pace' were not so significant that [Plaintiff] was incapable of performing 'simple tasks'" like those described in the RFC. *Id.* at 213.

In sum, the ALJ's limitation to concentrating, persisting, or maintaining pace "was supported by a valid explanation and so was appropriate." *Id.* at 215.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order will follow.

    */s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**